2005 ME 81

**OFFICIAL POST CONFIRMATION COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS**

v.

**Anna MARKHEIM**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 17, 2005.

Decided: June 29, 2005.

equal to or greater than $4,844,756.20, the amount authorized for attachment and trustee process in the renewal order, and abused its discretion in denying her request to modify the amount of the attachment. The Committee has moved for a dismissal of the appeal, which we deny. We agree with Anna Markheim's contention regarding the likelihood of recovering a judgment in the amount of the attachment order, and we vacate the order for renewal of the attachment and trustee process as well as the order denying her motion to modify.

Nicholas H. Walsh, Esq., Susan J. Szwed, Esq., Portland, for plaintiff.

G. Charles Shumway, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Anna Markheim appeals from an order for renewal of attachment and trustee process entered in the Superior Court (York County, *Brennan, J.*) in favor of the Official Post Confirmation Committee of Creditors Holding Unsecured Claims [1] (Committee) on the Committee's motion for a subsequent attachment brought pursuant to M.R. Civ. P 4A(f) and 14 M.R.S.A. § 4102 (2003). Anna Markheim also appeals from the order denying her motion to modify the order for attachment and trustee process. She argues that the court abused its discretion in finding that the Committee would more likely than not recover judgment against her in an amount

## I. BACKGROUND

[¶ 2] This case began with a complaint filed in December 2003 by the Committee in the District Court against Anna Markheim and her ex-husband, Chaim Markheim. The complaint sought to enforce a November 2002 California bankruptcy judgment against Chaim Markheim, and it alleged that the monetary judgment plus prejudgment interest was $4,844,756.20. Although the complaint alleged that Anna and Chaim were married, they had divorced a few months prior to the filing of the complaint. The complaint alleged that Chaim fraudulently conveyed money to Anna to purchase real estate in York for $460,000.

[¶ 3] With the complaint, the Committee filed an ex parte motion for attachment and trustee process, supported by three affidavits, which was granted by the District Court (York, *Janelle, J.*). The court found it more likely than not that the Committee would recover judgment in an amount equal to or greater than $4,844,756.20, and the court ordered an attachment and trustee process against the

---

1. The name of the Committee as stated in the second amended complaint is "The Official Committee of Unsecured Creditors of the Es- tate of Helionetics, Inc., now known as the Official Post Confirmation Committee of Creditors Holding Unsecured Claims."

property of Anna and Chaim in that amount. *See* M.R. Civ. P. 4A(c), 4B(c).

[¶ 4] Anna removed the case to the Superior Court pursuant to M.R. Civ. P. 76C, and she moved to dissolve the attachment order. *See* M.R. Civ. P. 4A(h). After a hearing, the Superior Court denied the motion without prejudice, and it also denied her subsequent motion to reconsider.

[¶ 5] Thereafter, the Committee twice amended the complaint to add defendants and allegations. The Committee also filed a motion for a subsequent attachment, alleging that the Committee had discovered liquid assets in Anna's name. *See* M.R. Civ. P. 4A(f); 14 M.R.S.A. § 4102. An affidavit accompanied the motion. Anna opposed the motion and argued that the amount of attachment was excessive. She also moved to modify the attachment on the ground that the Committee had not shown that it was more likely than not that it would obtain a judgment against her in the amount of the existing attachment order. The Committee opposed her motion and filed two additional affidavits. After a hearing, the court granted the Committee's motion and ordered a renewal of the previous attachment and trustee process in the same amount, $4,844,756.20. Thereafter, the court held a hearing on Anna's motion to modify the amount of the attachment and denied the motion.

## II. DISCUSSION

### A. The Committee's Motion to Dismiss the Appeal

■ [¶ 6] The Committee contends that Anna's appeal should be dismissed because the renewal order she appeals from is essentially the same order that the District Court had granted previously and the Superior Court had affirmed by denying her motion to dissolve the attachment. She did not appeal from those orders. The Committee claims that because Anna did not appeal from the earlier orders, and because the order renewing the attachment did not change the attachment amount or form, she cannot now appeal the substance of the attachment order.

■ [¶ 7] Although prejudgment attachment orders are not final judgments, they are appealable pursuant to the collateral order exception to the final judgment rule. *Lindner v. Barry*, 2003 ME 91, ¶ 3, 828 A.2d 788, 789. Accordingly, we have allowed an appeal from a subsequent attachment order increasing the amount of an original attachment, *id.* ¶¶ 3, 5, 828 A.2d at 789–90, as well as an appeal from a denial of a motion to dissolve an attachment, *Plourde v. Plourde*, 678 A.2d 1032, 1034 (Me.1996).

[¶ 8] M.R. Civ. P. 4A(c) and 4B(c) require that an attachment be made, and trustee process served, within thirty days of the order. In its motion for subsequent attachment, the Committee alleged that the only asset it had attached pursuant to the original ex parte order was Anna's real estate in York and that it now wanted to attach her liquid assets. The court granted that request and renewed the attachment and trustee process order. Although the amount of the attachment did not change, the order allowed the Committee to attach, and to subject to trustee process, assets that the Committee had not previously attached within the thirty-day period. Thus, the renewal order differs little from the attachment order in *Lindner v. Barry*, and its effect has the same potential to "operate harshly upon the party against whom it is sought." *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me.1993) (quoting *First Nat'l Bank of Damariscotta v. Staab*, 505 A.2d 490, 491 (Me.1986)). For these reasons, we decline to dismiss the appeal from the renewal attachment order.

[¶ 9] The Committee also contends that Anna's appeal from the denial of her motion to modify the attachment order should be dismissed. Anna previously filed a motion to dissolve the attachment, and the court denied that motion without prejudice, acknowledging that she could bring it again. Between the denial of Anna's motion to dissolve the attachment and the filing of her motion to modify, the Committee filed its second amended complaint updating allegations and adding new amounts of values of property. Presumably these changes, plus the pendency of the Committee's motion for a subsequent attachment, led the court to set a hearing on Anna's motion to modify. The appeal of the denial of Anna's motion to modify raises the same issues as her appeal from the renewal order, and its denial has the same potential to operate harshly upon her. Therefore, we decline to dismiss her appeal.

B. Merits

■ [¶ 10] We review orders of attachment for an abuse of discretion or clear error. *Lindner*, 2003 ME 91, ¶ 3, 828 A.2d at 789. Anna contends that the court abused its discretion when it found that it was more likely than not that the Committee would obtain a judgment against her in an amount equal to or greater than the attachment amount authorized by the court.

[¶ 11] The Committee's claim with respect to Anna is that Chaim fraudulently conferred assets to her in violation of the Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571–3582 (2003). The Committee, as the creditor of Chaim, can obtain a judgment, to the extent a transfer of an asset is voidable, against the first transferee of the asset for the value of that asset, or the amount necessary to satisfy its claim, whichever is less. *See* 14 M.R.S.A. § 3579(2)(A). A transfer is voidable if it is fraudulent, 14 M.R.S.A. § 3578(1)(A), and a transfer is fraudulent if it is made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor," 14 M.R.S.A. § 3575(1)(A). Factors to be considered in determining whether there is actual intent include whether the transfer was to an insider, 14 M.R.S.A. § 3575(2)(A), such as a relative, 14 M.R.S.A. § 3572(7)(A)(1), and whether the debtor absconded, 14 M.R.S.A. § 3575(2)(F).

■ [¶ 12] Anna has not argued that the court erred in finding that it was more likely than not that the Committee would obtain a judgment against her as a first transferee of assets fraudulently transferred to her from Chaim. The sole issue on appeal is whether the evidence before the court was sufficient to support a finding that it was more likely than not that a judgment could be obtained against her in an amount equal to or greater than the amount in the attachment order, which was the amount owed by Chaim on the California judgment, plus prejudgment interest.

[¶ 13] In order to obtain a prejudgment attachment against Anna, the Committee had to present evidence of the amounts of the alleged fraudulent transfers by Chaim to Anna since the potential judgment against Anna, as a first transferee, is limited to the value of the assets transferred if it is less than the amount necessary to satisfy the Committee's claim. *See* 14 M.R.S.A. § 3579(2). The Committee was required to present its evidence as to the amounts transferred to Anna in affidavits supporting its motion, and those affidavits had to set forth specific facts sufficient to warrant the required findings. M.R. Civ. P. 4A(c), (i). Facts in affidavits must be based on the affiant's own knowledge, or if they are based on the affiant's information

and belief, the affiant must state that the affiant believes the information to be true. M.R. Civ. P. 4A(i).

■ [¶ 14] To determine if the court abused its discretion or clearly erred, we review the evidence before the court. The original motion for an ex parte attachment was accompanied by three affidavits. One is signed by the Committee's Maine attorney and states that she checked the Town of York's assessment records and learned that real estate owned by Anna was assessed at $830,000. The second affidavit is signed by one of Chaim Markheim's creditors and details efforts to collect judgments against Chaim. The affidavit also states that during a 1997 judicial proceeding in California the creditor submitted evidence that established that Chaim had been the sole source of Anna's income for the previous four years and that Anna and Chaim both conducted their financial affairs to keep Chaim from having to pay claims against him.[2] The third affidavit is signed by the Committee's California attorney and avers that the California judgment against Chaim was entered on November 15, 2002, in the amount of $4,888,308.97, including pre-judgment interest, and that post-judgment interest, at the rate of 10% per annum, in the amount of $488,330.90 had accrued through November 15, 2003, and thereafter is accruing at the rate of $13,378.09 daily.[3]

[¶ 15] The Committee filed an additional affidavit in support of its motion for subsequent attachment and two affidavits in opposition to Anna's motion to modify. These affidavits are all signed by the Committee's Maine attorneys. The affidavit in support of the subsequent attachment refers to a wire transfer record, a copy of which is attached to the affidavit and which purports to show that Chaim transferred $4980 to Anna from a bank in Tel Aviv to a bank in Portland.

[¶ 16] One of the affidavits filed in opposition to Anna's motion to modify attaches a list of deposits into Anna's bank accounts. The affidavit states that the listed deposits, which total $1,739,943.60, are all from Anna's brokerage account or from wire transfers from Chaim. The other affidavit concerns the California bankruptcy judgment against Chaim with a copy of a document from the bankruptcy court. The affidavit states that the outstanding principal on the bankruptcy judgment, after credit for payments, is $4,198,763.01, plus interest of $724,330.43 as of November 1, 2004, and accruing at the daily rate of $1150.35 thereafter.

■ [¶ 17] Taken as a whole, the Committee's affidavits state that Anna owns a house in York assessed at $830,000, that Chaim transferred $4980 to her, and that the sum of $1,739,943.60 was deposited into Anna's bank accounts from two sources: (1) wire transfers, which showed that Chaim was the transferor, and (2) Anna's account at a brokerage firm. Nothing in any of the affidavits states that the funds for the house or in Anna's brokerage account came from Chaim, except the statement in the creditor's affidavit that evidence was presented at a 1997 California proceeding that Chaim was the sole source of Anna's income for the four previous years. The creditor did not directly aver that he believed that fact to be true, but instead stated that he believed the evidence had established that fact. Even if the Superior Court could have

---

**2.** None of the California court documents attached to the affidavit show any judicial findings regarding the source of Anna's income.

**3.** The per diem interest amount given in the affidavit appears to contain a misplaced comma.

made a reasonable inference that all of the deposits into Anna's Maine bank accounts are from Chaim and that her house was purchased with Chaim's funds, the sum of the deposits and house purchase are significantly less than the amount in the attachment order. In fact, the amount in the attachment order exceeds by more than two million dollars the total of the deposits into Anna's bank accounts and the price paid for the house.[4] Therefore, there is not sufficient evidence in the affidavits upon which the court could have found that it was more likely than not that Anna was a first transferee of assets valued at $4,844,756.20.

■ [¶ 18] The Committee argues that the Superior Court had additional evidence before it that came from the parties' discovery. However, that additional evidence is not contained in affidavits, and Rule 4A(c) requires the information supporting a motion for attachment to be in affidavits. *Lindner,* 2003 ME 91, ¶ 4, 828 A.2d at 790.

[¶ 19] Because the facts in the affidavits are insufficient to support a finding that it was more likely than not that Anna was a first transferee of $4,844,756.20, the renewed attachment order cannot stand and Anna is entitled to a modification of the order in such an amount as the Committee can show by affidavit is more likely than not the value of assets fraudulently transferred to her by Chaim.

The entry is:

Order of renewal attachment, and order denying Anna Markheim's motion to modify attachment, vacated. Case remanded to the Superior Court for further proceedings consistent with this opinion.

---

4. The Committee also relies upon a document, referred to as a "personal profile," attached to one of its attorney's affidavits, but the affidavit provides no information about the document nor does the affiant state that he believes the information in the document to be true. The document appears to be an undated form regarding an account, but there is no indication as to what account or from where or when the information originated. The form states that Anna's liquid net worth is $1,000,000 to $2,499,999; her net worth is $5,000,000 to $9,999,999; she has no present employment; and her occupation is "homemaker." The Committee argues that this information, in combination with other evidence, demonstrates that much of Anna's present wealth had to come from Chaim because she could not have obtained it herself. However, the information from the form is not the kind of evidence that meets the requirements of M.R. Civ. P. 4A(i).