STATE OF MAINE                          SUPERIOR COURT
YORK, ss.                               CIVIL ACTION
                                        DOCKET NO. CV-04-040
                                        GAB -  -   05

THE OFFICIAL POST-
CONFIRMATIONCOMMITTEE
OF CREDITORS HOLDING
UNSECURED CLAIMS                        ORDER ON PLAINTIFF'S
                                        MOTIONS (1) TO CONFIRM
        Petitioner                      ATTACHMENT AND (2) TO
                                        DISMISS CHAIM MARKHEIM
        v.                              AS A DEFENDANT

CHAIM MARKHEIM, ANNA
MARKHEIM, AND RYAN
MARKHEIM

        Respondents          OCT 18

Before the court is Plaintiff the Official Post-Confirmation Committee of

Creditors Holding Unsecured Claims' ("Committee") Motion to Confirm the

Attachment Against Anna Markheim ("Motion to Confirm Attachment") as well as

the Committee's motion to dismiss Chaim Markheim as a party to this action.

On December 11, 2003, the Committee filed a complaint in the District Court in

York, Maine, for fraudulent conveyance, naming Chaim Markheim and Anna

Markheim as defendants. Shortly thereafter, the Committee requested and was

granted by the District Court an *ex parte* attachment and trustee process against both

named defendants in the amount of the bankruptcy judgment against Chaim

Markheim. With this order, the Committee placed a lien on Ms. Markheim's real

estate in York county. About ten months after the initial attachment, having

discovered other property of Ms. Markheim, the Committee filed a motion for

subsequent attachment with this court.[1] Ms. Markheim opposed the motion, and brought a motion to modify the original *ex parte* attachment and trustee process. On November 3, 2004, this court denied Ms. Markheim's motion to modify the attachment and granted the Committee's motion for renewal of attachment. Ms. Markheim appealed these decisions to the Law Court, which vacated them on July 15, 2005, and remanded the case to this court for further proceedings consistent with its opinion.

Many of the factual details of this case are disputed. However, it is clear at least that at some point in the late 1990s, a company by the name of Helionetics, Inc. filed for bankruptcy in the U.S. Bankruptcy Court for the Central District of California, Santa Ana divison. Chaim Markheim was an officer of this company, and, as of November 15, 2002, a judgment debtor in the company's bankruptcy. On this date, the bankruptcy court entered a default judgment against Chaim Markheim for breach of fiduciary duty, and awarded the Committee[2] $4,833,437.50 plus pre-judgment interest in damages. The court also avoided a transfer to Chaim Markheim from Helionetics, Inc. of 13,637 shares of KSW, Inc. stock.

The Committee alleges that, in the period from January 7, 2000 through December 20, 2001, Chaim Markheim made numerous transfers of cash to Ms. Markheim, who was during the relevant period either married to or recently divorced from Chaim Markheim. It is unclear when Chaim Markheim left California, but at some point, probably in late 2001, he did leave the jurisdiction. Most of the claimed transfers appear to have taken place before Chaim Markheim left California, but some transfers occurred after he had left. During this entire period of January 7, 2000

---

[1] On January 29, 2004, Ms. Markheim had removed the case to Superior Court.
[2] Then called the Official Committee of Unsecured Creditors of the Estate of Helionetics, Inc.

through December 20, 2001, however, Chaim Markheim was indebted to the estate of Helionetics, Inc. for some as-yet undetermined sum of money, for breaches of fiduciary duty which occurred before the year 2000. It is uncertain whether Chaim Markheim was actively engaged in settlement negotiations with the bankruptcy estate during this period, although the affidavit of Arvel Bowyer on behalf of the Committee indicates that he was.

After the default judgment had been entered against Chaim Markheim on November 15, 2002, the Committee pursued him for payment. Based on information provided by Chaim Markham's son, Ryan Markheim, Chaim Markheim was traced to an apartment building in Herzlia, Israel. At the request of the Committee, a local attorney, Leon Fine, visited this building on September 9, 2004, and was told by the concierge that Chaim Markheim lived in the building until about 18-24 months ago, and that he left no forwarding address. The Committee has not had any success since that time in locating Chaim Markheim.

## I.    MOTION TO DISMISS CHAIM MARKHEIM AS A DEFENDANT

The Committee has moved to dismiss Chaim Markheim as a defendant in this suit, claiming that, despite their best efforts, they have been unable to locate him, and that serving process on Chaim Markheim by publication in Israel would cost approximately $20,000. Ms. Markheim claims that this court should not dismiss Chaim Markheim as a defendant in this case because (1) under the prevailing UFTA law, Chaim Markheim, the transferor, is considered an essential party and (2) if the court were to dismiss Chaim Markheim, Ms. Markheim would have no way of meeting her burden of proof that Chaim Markheim was not insolvent at the time of the transfers.

Cases interpreting the UFTA do not bear out Ms. Markheim's first contention, that the transferor is a necessary party to a fraudulent conveyance action.[3] Rather, they indicate only that the *transferee* is a necessary party to a fraudulent conveyance action because the transferee has an interest in the subject matter of the suit which should not be affected by a decree unless (s)he has been given the right to be heard. *See Nastro v. D'Onofrio*, 263 F.Supp.2d 446, 450 (D. Conn. 2003). *See also* 37 Am Jur 2d *Fraudulent Conveyances and Transfers* § 188.

The court further agrees with the Committee that it is not responsible for aiding Ms. Markheim in meeting her burden of proof, if indeed she is called upon under the UFTA to disprove Chaim Markheim's presumed insolvency in order to defend against the Committee's claim. Finally, the court is satisfied, from the affidavit produced by the Committee of Attorney Leon Fine, that the Committee has diligently pursued Chaim Markheim and that it is unlikely to be able to find Chaim Markheim at this point. Therefore, the court finds that, pursuant to M.R.Civ.P. 21, it is just to dismiss Chaim Markheim without prejudice as a defendant in this action.

## II. MOTION TO CONFIRM ATTACHMENT AGAINST ANNA MARKHEIM

The motion to confirm attachment is presented on remand from the Law Court's order of June 29, 2005, vacating this court's orders (1) to renew the Committee's attachment in the amount of $4,888,308.97, and (2) denying Anna

---

[3] One 2003 bankruptcy case does note, "courts have held that the transferor and the transferee are deemed to be necessary parties to a fraudulent transfer suit." Krol v. Wilcek, 295 B.R. 246 (Bankr. N.D. Ill. 2003). However, this case makes this statement in the context of determining that a transferee is a necessary party. Further, the case and Bankruptcy Rule section to which the court cites for support of this proposition do not bear it out insofar as it asserts that a transferor is a necessary party. Rather, the cited bankruptcy rule simply indicates that actions before a bankruptcy court are subject to the Federal Rule of Civil Procedure 19, which governs the joinder of necessary parties, and the cited case deals with a suit against an ultimate transferee and an intermittent transferee who then transferred the assets to the ultimate transferee. In other words, neither the case nor the rule support the proposition that the *original transferor* is a necessary party to a fraudulent transfer action.

Markheim's ("Ms. Markheim") motion to modify the attachment. *Official Post Confirmation Committee of Creditors Holding Unsecured Claims v. Markheim*, 2005 ME 81, ¶1. On remand, this court must reconsider whether it is more likely than not that the Committee will recover judgment in an amount equal to or greater than the aggregate sum of the attachment. *See id.* at ¶19. Specifically, it is the sum of the attachment that the Law Court found on appeal to be insufficiently supported by the affidavits and incorporated materials submitted by the Committee in support of their attachment-related motions[4]. *See id.* at ¶ 12.

The Law Court noted that Ms. Markheim did not challenge on appeal the court's finding that the Committee is more likely than not to obtain a judgment against Ms. Markheim. *See id.* However, on remand, Ms. Markheim's Response to the Committee's Motion for Confirmation of Attachment ("Response") *does* challenge the sufficiency of this finding. In fact, rather than challenge the revised amount submitted by the Committee in its Motion to Confirm Attachment, the Response refutes the Committee's likelihood of recovery. *See* Response at ¶ 19 (stating "Since Anna Markheim returned $40,000 to Chaim Markheim, the total amount that she received is only $2,024,688,000.43 [*sic*]." Therefore, the Court will reconsider the Motion to Confirm Attachment (1) for the sufficiency of the amount claimed, only over $2,024,688.43 as well as (2) for the sufficiency of proof that the Committee is more likely than not to recover judgment from Ms. Markheim.

1. **Form of Evidence Allowed in Motion for Renewal of Attachment**:

---

[4] The attachment-related motions are
   (1) The Committee's original motion for attachment, supported by three affidavits;
   (2) The Committee's motion of subsequent attachment, for which an additional affidavit was supplied by the Committee; and
   (3) The Committee's opposition to Ms. Markheim's motion to modify the attachment, for which it supplied two more affidavits.

The Law Court's June 29, 2005 opinion reaffirms that proper support for a motion for attachment (or renewal of attachment) must be in the form of affidavits, and that the court cannot consider evidence not in the affidavits or in documents authenticated by and incorporated by reference in them. *See Markheim*, 2005 ME 81 at ¶ 18. The motion currently before the court from the Committee is supported by the affidavit of Nicholas Walsh, an attorney of record for the Committee. This affidavit authenticates and incorporates by reference excerpts from a transcript of a deposition taken of Ms. Markheim on March 30, 2005, as well as exhibits presented to Ms. Markheim at that deposition.

2. **Sufficiency of Evidence Establishing the Amount Likely To Be Recovered**:

The Committee's current motion to confirm attachment requests confirmation of the attachment ordered against Ms. Markheim only in the amount of $2,064,688.43. This figure is arrived at through tallying a series of transfers purportedly made to Ms. Markheim from January 7, 2000 through December 20, 2001. The affidavit of Nicholas Walsh in support of the Committee's motion states that these transfers were made from Chaim Markheim to Anna Markheim, and points to the attached excerpts from Ms. Markheim's deposition to support this assertion. The Exhibits and, moreover, Ms. Markheim's testimony from her deposition, fully support the statements made in Attorney Walsh's deposition in support of the Committee's Motion to Confirm Attachment.

The Response contends that Ms. Markheim returned $40,000 of the amount claimed for attachment by the Committee to Mr. Markheim. Response, ¶ 19. This assertion is supported only by Ms. Markheim's assertion in her affidavit, at ¶ 2: "Plaintiff's summary of checks to me in the Motion to Confirm the Attachment neglects to mention $40,000 that I returned to Chaim Markheim on March 5, 2000."

However, Ms. Markheim points to no documentation in support of this claim. In the face of clearly documented evidence of transfers in the amount of $2,064,688.43 to Ms. Markheim from Chaim Markheim, the court finds that it is more likely than not that the amount transferred to Ms. Markheim from Chaim Markheim, for purposes of assessing a potential recovery against Ms. Markheim and approving an amount for attachment, is $2,064,688.43.

3. **Sufficiency of Evidence Establishing the Committee is Likely to Recover From Ms. Markheim**:

The underlying action in this case for which the Committee seeks Confirmation of Attachment is a claim of fraudulent transfer of funds from Chaim Markheim to Ms. Markheim. Maine has adopted the Uniform Fraudulent Transfers Act ("UFTA") at 14 M.R.S. §§3571 et. seq. Under the UFTA, a creditor who has obtained judgment on a claim may, if the court so orders, levy execution on an asset fraudulently transferred or its proceeds. 14 M.R.S. § 3578. In its original Ex Parte Motion for Prejudgment Attachment, the Committee submitted in support of its motion an affidavit of Charles W. Parret, California Counsel for the Committee. This affidavit authenticates a copy of a judgment, dated November 15, 2002, from the bankruptcy court for the Central District of California, Santa Ana division, that awarded damages to the Committee against Chaim Markheim in the amount of $4,833,437.50 plus pre-judgment interest, and avoided the transfer of 13,637 shares of KSW, Inc. stock from Helionetics, Inc. to Chaim Markheim. This judgment awards damages specifically against Chaim Markheim, and no other defendants. The court thus finds that it is more likely than not that the Committee is a creditor who has obtained judgment on a claim against Chaim Markheim, in an amount not less than $4,833,437.50.

The UFTA defines a transfer made by a debtor as fraudulent where the debtor made the transfer with actual intent to hinder, delay or defraud any creditor of the debtor. 14 M.R.S. § 3575(1)(A)[5]. In determining actual intent under this test, the statute lists eleven non-exclusive factors that act as "badges of fraud," indicating an actual intent to defraud. With respect to granting the Committee's Motion to Confirm Attachment, the court must determine whether it is more likely than not under this test that Chaim Markheim made transfers to Ms. Markheim with an actual intent to defraud the Committee. The relevant period of time, for purposes of this determination, is January 7, 2000 through December 20, 2001. During this period, the Committee was a creditor of Chaim Markheim with an unsecured, disputed, unliquidated legal claim against Chaim Markheim.[6] On the information properly before the court in the form of affidavits and authenticated supporting documents, the Court finds that it is more likely than not that Chaim Markheim made the subject transfers to Ms. Markheim with an actual intent to defraud the Committee.

---

[5] This is only one of several tests for a fraudulent transfer under the UFTA. The Committee does not indicate in their Complaint for Fraudulent Conveyance which of the tests of a fraudulent transfer they rely on. However, the other tests require a showing of insolvency at the time of the transfer, toward which fact the Committee has failed to introduce evidence. The Committee has not shown that, in the period from January 7, 2000 through December 20, 2001, Chaim Markheim was generally not paying his debts as they became due or that, in this period, his debts were greater than his assets. *See, e.g.* the affidavit of Arvel Bowyer at ¶ 13, submitted by the Committee, (stating that Chaim Markheim's stock options had a value in excess of $3,000,000 for most of 2000.) *See also* 14 M.R.S. § 3573 (definitions of insolvency.)

[6] Mrs. Markheim's Response, ¶ 4, notes, "On December 29, 1995 Helionetics distributed without consideration all of its shares of KSWI to its shareholders. Plaintiff argued in the underlying action that said transfer was fraudulent to Helionetics' existing creditors. As part of that action, Plaintiff was 'awarded damages against Defendant Chaim Markheim for breach of fiduciary duty. . . in the amount of $4,833,437.50.'" The definition of "creditor" under the UFTA includes any person who has a "claim." 14 M.R.S. § 3572(4). The definition of "claim," in turn, is broad, encompassing any right to payment, "whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 14 M.R.S. § 3572(3). Thus, during the relevant time period, it is clear that, although the Committee had not obtained judgment against Chaim Markheim, it was a "creditor" of Mr. Markheim for purposes of determining whether he had engaged in a fraudulent transfer with respect to them.

First, the Court finds it more likely than not that Chaim Markheim made these transfers to Ms. Markheim without receiving reasonably equivalent value in exchange. The court has the following information before it: The Motion to Confirm Attachment cites to Ms. Markheim's deposition at pages 82-83, in which Ms. Markheim states that apart from offering her husband hospitality in exchange for the transfers of cash, she did not give her husband anything else of value. The court finds on this evidence that it is more likely than not that Ms. Markheim received the transfers without giving reasonably equivalent value in exchange.

Second, the court finds it more likely than not that Mr. Markheim had absconded. The court has the following information before it: The Committee's original Ex Parte Motion for Attachment, which was filed with the District Court on December 11, 2003 states that the Committee and Chaim Markheim were, in 2000 and 2001, in the process of resolving their dispute, and that Chaim Markheim had offered to settle the case, when he "disappeared." ¶¶ 3 and 4. These statements are supported by a December 5, 2003 affidavit of Arvel Bowyer, in which he states that he has personal knowledge of the fact that the Committee had a continuing dialogue toward settlement with Chaim Markheim during 2000 and the early part of 2001, and that, after settlement negotiations broke down in 2001, the Committee lost all contact with the Markheims.

Third, the court finds it more likely than not that these transfers occurred shortly before or shortly after a substantial debt was incurred. The November 15, 2002 bankruptcy judgment against Chaim Markheim made fixed, liquidated, and enforceable against Chaim Markheim the disputed debt he owed to the Committee prior to the judgment. The deposition of Arvel Bowyer indicates that he has personal

knowledge that Chaim Markheim absconded in 2001, sometime relatively shortly before judgment was entered against him in Helionetics' bankruptcy case.

Fourth, the court finds it more likely than not that these transfers were made to an insider under the UFTA. *See* 14 M.R.S. 3572, Commissioner's Comment 7 (stating "a court may find a person living with an individual for an extended time in the same household or as a permanent companion to have the kind of close relationship intended to be covered by the term 'insider.'") The Motion to Confirm Attachment states that during the relevant period, Ms. Markheim was Chaim Markheim's wife or ex-wife, and this assertion is supported by Ms. Markheim's deposition at page 160.

Ms. Markheim claims, however, that discovery has produced convincing evidence that the Committee's judgment claim has been wholly or partially satisfied by payments received from the co-obligors on the California judgment. Response at ¶ 23. Ms. Markheim claims that the Committee obtained substantial value from a Susan Barnes through her agreement to surrender her KSWI stock. Response at ¶ 17. Ms. Markheim argues that this surrender should affect the amount which Chaim Markheim owes to the Committee, because he is supposed to have "breach[ed] his fiduciary duty" by having himself accepted shares of KSWI stock without consideration. Response at ¶ 4. The documents supplied by Ms. Markheim in support of her assertion, however, do not indicate that the debt owed by Chaim Markheim was jointly owed by Susan Barnes. The November 15, 2002 California bankruptcy judgment refers solely to Chaim Markheim. It awards damages to the Committee specifically against Chaim Markheim for his breach of fiduciary duty to Helionetics, and makes no reference to Susan Barnes as a joint tortfeasor against the company.

On the basis of this information, properly presented to the court in the Committee's various motions with respect to attachment, and absent sufficient evidence by Ms. Markheim rebutting this evidence, the court finds it more likely than not that the Committee will be able, under the UFTA, to levy execution against Ms. Markheim's assets, either as assets fraudulently transferred from Chaim Markheim or as proceeds thereof, in the amount of $2,064,688.43. *See* 14 M.R.S. § 3578.

The order is:

The Committee's Motion to Dismiss Chaim Markheim without prejudice is GRANTED; the Committee's Motion to Confirm Attachment Against Anna Markheim in the amount of $2,064,688 is GRANTED.

Dated at Portland, Maine this _____ day of _____, 2005.

10/7/05

G. Arthur Brennan
Justice, Superior Court

Susan J. Szwed, Esq. - PL
Nicholas Walsh, Esq. - PL
G. Charles Shumway, II, Esq. - DEF. ANNA MARKHEIM